UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS J. DECOSEY,

               Petitioner,                           Civil Case No. 10-CV-13311

v.

                                                 HON. MARK A. GOLDSMITH

STEVE RIVARD,

               Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I.   INTRODUCTION

Pending before the Court is Petitioner Marcus J. DeCosey's pro se habeas corpus petition challenging his state convictions for extortion, two assault crimes, and three weapon offenses. Petitioner raises two issues regarding his constitutional right of confrontation and two issues pertaining to his sentence.   Respondent Steve Rivard urges the Court to deny the petition.   The Court agrees with Respondent that Petitioner is not entitled to habeas corpus relief because his claims are procedurally defaulted, not cognizable on habeas review, or meritless.   Accordingly, for the reasons stated below, the habeas petition will be denied.

### II.   BACKGROUND

#### A.   The Charges and Trial Testimony

Petitioner was bound over for trial in Kent County Circuit Court on charges of extortion, assault with intent to commit murder, assault with a dangerous weapon, carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm during the commission of a felony.   The charges arose from an incident that occurred at Nachica Wheeler's apartment in

Grand Rapids, Michigan on April 24, 2007.  Nachica was Petitioner's former girlfriend.  The

evidence at trial established that Petitioner

> arrived at Nachica's apartment and physically assaulted her, pointed a gun at her
> head, and threatened to kill her, while demanding that she telephone her brother
> and convince him to come to the apartment.   Nachica's brother Rico Wheeler and
> her cousin Taylor Wheeler witnessed portions of the incident, and all three [Rico,
> Taylor, and Nachica Wheeler] testified at the preliminary examination.   All three
> witnesses, however, failed to appear to testify at trial, and the prosecutor
> requested that the preliminary examination testimony be admitted as former
> testimony under the MRE 804(b)(1) hearsay exception.   Defense counsel
> requested an adjournment to provide police with more time to locate the
> witnesses.   However, after defense counsel agreed that the police and prosecutor
> had done all they could to locate the witnesses, the trial court admitted the
> preliminary examination testimonies of all three witnesses.

People v. DeCosey, No. 283051, 2009 WL 1068878, at *1 (Mich. Ct. App. Apr. 23, 2009).

Nachica Wheeler testified at the preliminary examination that she invited Petitioner to

her apartment on April 24, 2007, and that everything was fine for the first thirty minutes of

Petitioner's visit.  Then he grabbed her neck, waved a gun in the air, and threatened to kill her.

He wanted her to call her brother because a fight occurred about two weeks earlier, and

Petitioner thought that her brother had set up the fight.

Rico Wheeler was Nachica Wheeler's brother.   He testified at the preliminary

examination that his cousin Taylor telephoned him on April 24, 2007, and told him to go to his

sister's apartment because his sister's boyfriend was talking about shooting someone.   When he

got to Nachica's apartment, he heard her crying, and he heard Petitioner say, "You need to call

your brother now, get him over here."   Petitioner threatened to shoot Nachica if she did not get

Rico there.   Rico suspected that Petitioner planned to do something to him because Petitioner

thought Rico had arranged to have Petitioner beaten by another man about two weeks earlier.

Rico went inside the apartment briefly, but he snuck back outside without Petitioner knowing he

was there.   Someone then called the police.

Taylor Wheeler testified at the preliminary examination that he was Nachica's cousin and that he was living across the hallway from her on April 24, 2007.   He went to Nachica's apartment that night and heard Petitioner say something about Nachica's brother setting up Petitioner on a previous occasion.   Nachica was crying and saying that she did know about the prior incident.   Petitioner was waving a revolver in the air, and he said that he was going to "pop" somebody that night.   Taylor left the apartment when Petitioner pointed the gun at him.

Douglas Bowlson testified at trial that, on April 24, 2007, he went to an apartment on 33rd Street to deliver a phone card.   From the doorway of the apartment, he could hear someone crying, and he saw a man in a red shirt or red jacket holding a gun.   He could not see the man's face.   Lino Johnson also saw a man in a red coat holding a gun inside the apartment on 33nd Street.   Lino heard the man say, "You either get your brother over here or I'm gonna kill him or I'm gonna kill you, either way.   It doesn't make me any difference."

Police Officer Robert Wiersema testified that he was dispatched to the apartment and was the first police officer to arrive there.   He spoke with Lino Johnson and Rico Wheeler.   He later observed a woman and a man in a red jacket come outside the apartment and begin to walk down the stairs.   The man was holding the woman by the arm and appeared to be trying to pull her down the stairs.   He concluded that the woman was the victim and the man was the suspect. When he approached them and ordered them to put their hands up, the man released the woman and ran back into the apartment.   Within two minutes, the man stepped back out of the apartment and was taken into custody.   Officer Wiersema identified Petitioner at trial as the man wearing the red jacket at the crime scene, but he conceded that he did not see Petitioner with a

gun that night.

Police Officer Patrick Baker testified that he was one of several officers dispatched to the apartment on 33rd Street where a man supposedly was holding a woman at gunpoint. He spoke with Nachica Wheeler, who was crying and visibly upset. Nachica told him that Petitioner was her former boyfriend and that Petitioner was drunk when he arrived at her apartment. Nachica went on to say that, about twenty minutes after Petitioner arrived, he became increasingly angry because he thought that Nachica and her brother were responsible for Petitioner being beat up about a week earlier. She saw the butt of a handgun sticking out of Petitioner's jacket. She then ran to her cousin Taylor Wheeler's apartment across the hallway and returned to her apartment with Taylor and a friend named Mildred Cooley. While Taylor and Mildred were present, Petitioner grabbed her around the neck with both hands, shook her, banged her head on the door, and threw her on the ground. Then, he pulled out a handgun, pointed the gun at her head, and threatened to kill her if she did not call her brother Rico and arrange for Rico to come to her apartment. Later, at Petitioner's suggestion, they walked out of the apartment. She saw police officers at the main door. Petitioner then ran back into the apartment and left her standing on the stairway.

Officer Baker did not see any visible injuries on Nachica as she explained what had happened, but he called an ambulance and advised Nachica to contact the detective bureau the next morning at 10:00 a.m. or after she was released from the hospital.

Police Officer Ryan Gard participated in a search of Nachica's apartment after Petitioner was taken into custody. He found a loaded handgun on the floor of the bedroom underneath a pile of clothes and cushions. Gretchen Ross testified that there were no latent prints on the gun.

4

Detective Timothy DeVries testified that Nachica Wheeler never contacted him, and his efforts to contact her were unsuccessful.  He became concerned and went to the county jail to determine whether Nachica had been in contact with Petitioner.  At the jail, he discovered that Petitioner and Nachica had conversed over the telephone.  In one of their conversations, Petitioner told Nachica that he loved her and that they were going to get married.  In return, Nachica promised not to go to court or to speak with detectives.

Another officer subsequently informed Detective DeVries that Petitioner had been trying frantically to call a friend while he was seated in the officer's cruiser.  Detective DeVries then went back to the jail and learned of other telephone conversations that Petitioner conducted while in jail.  During one conversation with an unknown individual, Petitioner openly discussed the incident for which he was being detained.  Petitioner stated in that conversation that he had a girlfriend named Brittany and that he intended to be with Brittany, but that he needed Nachica to cooperate and not appear in court.  Consequently, Nachica was supposed to think that he was planning to return to her.   Petitioner did not testify or present any witnesses.  Defense counsel, however,  read into the record a letter that Nachica Wheeler had written to him.[1]  In her letter, Nachica stated that she gave a false statement in court about the incident that occurred on April 24, 2007, and that her brother had forced her to go to court and say certain things.  She also stated in her letter that Petitioner had never said he wanted to kill her, that he did not possess a firearm, and that he did not try to harm her in any way.

In his closing argument, defense counsel stated that the incident between Petitioner and

---

[1] The prosecutor expressly stated that she was not objecting to the admission of the letter.

Nachica was merely an argument that got out of hand.   Defense counsel maintained that Petitioner was bluffing during the incident, that there was reasonable doubt as to his intent, and that Rico and Taylor Wheeler lied throughout the investigation.

## B.   The Verdict, Sentence, and Appeal

On November 2, 2007, the jury found Petitioner guilty of extortion, Mich. Comp. Laws § 750.213, assault with intent to do great bodily harm less than murder (as a lesser offense of assault with intent to commit murder), Mich. Comp. Laws § 750.84, assault with a dangerous weapon, Mich. Comp. Laws § 750.82, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.   The trial court sentenced Petitioner as a third felony offender to concurrent terms of eighteen to forty years for extortion, ten to twenty years for assault with intent to do great bodily harm less than murder, four to eight years for assault with a dangerous weapon, and five to ten years for carrying a concealed weapon and for being a felon in possession of a firearm.   The court sentenced Petitioner to a consecutive term of two years in prison for possessing a firearm during the commission of a felony.

Petitioner appealed his convictions, raising the four claims that he asserts in his habeas petition.   The Michigan Court of Appeals affirmed his convictions, but remanded his case to the trial court for correction of the sentencing information report on offense variable eight of the sentencing guidelines.   See People v. DeCosey, No. 283051, 2009 WL 1068878 (Mich. Ct. App. Apr. 21, 2009).   On September 28, 2009, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.   See People v. DeCosey, 772 N.W.2d 389

(Mich. 2009) (table).[2]

## C.   The Habeas Petition and Answer to the Petition

On August 20, 2010, Petitioner filed his habeas corpus petition.   He claims that:   (1) the trial court violated his constitutional right of confrontation by permitting the prior-recorded testimony of Nachica, Rico, and Taylor Wheeler to be read to the jury and by refusing to adjourn the trial until the three witnesses could be located; (2) the trial court violated his constitutional right of confrontation by admitting into evidence Nachica Wheeler's statement to the police; (3) the trial court erred when scoring offense variables four, seven, eight, and nine of the Michigan sentencing guidelines; and (4) due process requires re-sentencing to award jail credit. Respondent argues in his answer to the habeas petition that Petitioner's first and second claims are procedurally defaulted, waived, and without merit, and that Petitioner's third and fourth

---

[2]   Then-Chief-Justice Marilyn J. Kelly voted to grant leave to appeal for the reasons given in her opinion in People v. Idziak 773 N.W.2d 616 (Mich. 2009), where the majority of justices held that

> under MCL 791.238(2), the parolee resumes serving his earlier sentence on the date he is arrested for the new criminal offense.   As long as time remains on the parolee's earlier sentence, he remains incarcerated, regardless of his eligibility for bond or his ability to furnish it.   Since the parolee is not being held in jail "because of being denied or unable to furnish bond," the jail credit statute does not apply.

> Further, a sentencing court lacks common law discretion to grant credit against a parolee's new minimum sentence in contravention of the statutory scheme. Finally, the denial of credit against a new minimum sentence does not violate the double jeopardy clauses or the equal protection clauses of the United States or Michigan constitutions.   U.S. Const., Am. V and XIV; Const. 1963, art. 1, §§ 2 and 15.

Idziak, 773 N.W.2d at 618-19.   Justice Michael F. Cavanagh voted to grant Petitioner leave to appeal to reconsider Idziak.

claims are waived, not cognizable on habeas review, or without merit.

### III.   STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Harrington v. Richter, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.  To obtain a writ of habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

## IV. ANALYSIS

### A.  Petitioner's Confrontation Clause Claims - Procedural Default

The first habeas claim alleges that the trial court violated Petitioner's constitutional right of confrontation by permitting the prosecutor to read the Wheelers' testimony at the preliminary examination to Petitioner's jury.  Petitioner claims that the Wheelers' prior-recorded testimony was extremely damaging to the defense and that the trial court violated his right to due process by refusing to adjourn the trial until the three witnesses could be located.   In his second habeas claim, Petitioner alleges that the trial court deprived him of his right of confrontation by admitting in evidence Nachica Wheeler's statement to the police immediately after the crime.

The trial court permitted the prosecutor to play a recording of Nachica's, Rico's, and Taylor's prior testimony at Petitioner's trial because the three witnesses did not appear at trial. Petitioner contends that the prior-recorded testimony was inadmissible because the prosecution did not exercise due diligence in procuring the missing witnesses' attendance at trial.   The Michigan Court of Appeals reviewed Petitioner's Confrontation Clause claims for "plain error" because Petitioner did not preserve his constitutional claims for appellate review.   Respondent therefore argues that the claims are procedurally defaulted.

#### 1.  The Doctrine of Procedural Default

A procedural default is "a critical failure to comply with state procedural law."   Trest v. Cain,  522 U.S. 87, 89 (1997).   The doctrine of procedural default prohibits a federal court from

9

reviewing the merits of a petitioner's claims, including constitutional claims, if the state court declined to hear the claims because the prisoner failed to abide by a state procedural rule. Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  Three elements must be satisfied before a claim may be considered procedurally defaulted:  "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." Willis v. Smith, 351 F.3d 741, 744 (6th Cir. 2003).

### a.   The State Procedural Rule

The state procedural rule applicable here is the contemporaneous-objection rule, which requires defendants in criminal cases to preserve their constitutional claims for appeal by bringing their claims to the attention of the trial court before presenting their claims on appeal. People v. Carines, 597 N.W.2d 130, 137-39 (Mich. 1999).  Petitioner violated this rule by failing to raise his claims as constitutional arguments at trial and by ultimately conceding that the evidence was admissible.  When the issue of the witnesses' unavailability came up, defense counsel argued that the test was whether the police exercised due diligence in locating the witnesses.  This is the test under state law.  See Mich. R. Evid. 804(a)(5) (defining unavailability of witnesses).  At no point did defense counsel argue that Petitioner's right of confrontation would be violated by the use of prior-recorded testimony in place of live testimony.  Furthermore, when the trial court asked defense counsel what additional steps the police should take, counsel responded, "I don't know that they can do any more than that, quite honestly."  (Trial Tr. Vol. II, 9-10, Nov. 1, 2007.)

10

Defense counsel requested an adjournment of trial so that the police could obtain material- witness warrants, but he did not make a due process argument.  And when the trial court offered to take testimony about efforts that the prosecution made to locate the missing witnesses, defense counsel stated that he had worked with the prosecutor and detective for years and did not doubt that they had been trying to locate the witnesses.  (Id. at 10-11.)  He went on to say that he preferred to have the prosecutor use a recording of the prior testimony, but that he had no objection to also providing a transcript of the prior proceeding to the jury.  (Id. at 11-14.)

As for Nachica's statement to the police, defense counsel argued that the trial court was required to review the evidence under Mich. Comp. Laws § 768.27c, which governs the admissibility of a statement relating to the infliction or threat of physical injury.  He did not argue that Petitioner's right of confrontation would be violated by the introduction of Nachica's statement.  Moreover, he agreed that the statement was admissible under § 768.27c and that the prosecutor had given him timely notice of her intent to use Nachica's statement.   (Id. at 15-17.)

The Court concludes that Petitioner failed to comply with the contemporaneous-objection rule and that the first element of procedural default is satisfied.

### b.   Enforcement of the Rule

The second element of procedural default is whether the state procedural rule in question was enforced.  The Michigan Court of Appeals was the last state court to issue a reasoned opinion on Petitioner's first and second claims, and it relied on the contemporaneous-objection rule to deny relief.   On the issue of the preliminary-examination testimony, the Court of Appeals cited Carines and stated that Petitioner failed to preserve this issue for review.  The Court of Appeals then reviewed the unpreserved constitutional error for plain error affecting substantial

11

rights.  DeCosey, 2009 WL 1068878, at *1.

Regarding the trial court's refusal to grant a continuance, the Court of Appeals stated that Petitioner "did not raise a due process challenge at trial and, therefore [the court's] review [was] limited to plain error affecting substantial rights."  Id. at *3.  With regard to Nachica's statement to the police, the Court of Appeals stated that Petitioner "failed to preserve this issue for review because he did [not] object to the evidence at trial on Confrontation Clause grounds." Id. at *4.[3]  This Court concludes that the second element of procedural default is satisfied.

### c.  Adequate and Independent

The third element of procedural default is whether the procedural rule is an adequate and independent state ground foreclosing review of a federal constitutional claim.  The United States Court of Appeals for the Sixth Circuit has held that "the contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review," Awkal v. Mitchell, 613 F.3d 629, 648 (6th Cir. 2010), cert. denied, 131 S. Ct. 1002 (2011), and that "application of plain error review constitutes enforcement of the rule," Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005).  Thus, there can be no doubt that the state court's order in this case was an adequate and independent state ground barring federal habeas review.

The Court concludes that all three elements of procedural default are satisfied here. Petitioner violated an applicable state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the state court's reliance on the rule was an adequate and independent state ground foreclosing review of the federal claim.  Consequently, "federal

---

[3]  Although the state court's decision says that Petitioner "did object to the evidence at trial on Confrontation Clause grounds," it is clear from the context of the statement that the Court of Appeals omitted the word "not" from the statement.

habeas review of [Petitioner's] claims is barred unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### 2. Cause, Prejudice, Miscarriage of Justice

Petitioner maintains that his claims are not procedurally defaulted because his attorney objected at trial. While it is true that his attorney made some initial arguments under state law, he did not object on constitutional grounds. Furthermore, defense counsel ultimately conceded that the police had done all they could to locate the missing witnesses and that the prior-recorded testimony could be admitted in evidence. He also conceded that Nachica's statement to the police was admissible under state law. The state court therefore reasonably concluded that Petitioner did not preserve his claims by objecting on constitutional grounds at trial.

Petitioner has not advanced any other arguments in support of a finding of "cause." And because he has not established "cause," the Court is not required to determine whether he was prejudiced by the alleged constitutional violations. Tolliver v. Sheets, 594 F.3d 900, 930 n.13 (6th Cir. 2010).

The miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404 (1993). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986).

13

To be credible, however, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). The petitioner's burden "is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006).

Petitioner has not presented the Court with any new evidence in support of a claim of actual innocence, and the evidence against him was substantial. Consequently, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the substantive merits of Petitioner's claims. The claims are procedurally defaulted and barred from substantive review. Nevertheless, for the following reasons, the Court also finds that Petitioner's Confrontation Clause claims lack merit or were waived.

**B. Petitioner's Confrontation Clause Claims on the Merits**

The Confrontation Clause of the Sixth Amendment is applicable to the States through the Fourteenth Amendment. Idaho v. Wright, 497 U.S. 805, 813 (1990). It guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." Giles v. California, 554 U.S. 353, 358 (2008). "Testimonial" evidence includes, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford v. Washington, 541

14

U.S. 36, 68 (2004).

**1.   Admission of Testimony from the Preliminary Examination**

The prior-recorded testimony of Nachica, Rico, and Taylor Wheeler was "testimonial" evidence because it was prior testimony from a preliminary hearing.   And because Petitioner had an opportunity to cross-examine Nachica, Rico, and Taylor at his preliminary examination, the only question is whether the three witnesses were actually unavailable at trial.   To be "unavailable," the prosecution must have made a good-faith effort to obtain the witness's presence at trial.   Ohio v. Roberts, 448 U.S. 56, 74 (1980), abrogated in part on other grounds by Crawford, 541 U.S. at 68.

> The law does not require the doing of a futile act.   Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution.   But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation.   "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness."   The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.   As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate.

Id. at 74-75 (internal citation omitted).

**a.   Nachica Wheeler**

Petitioner alleges that the prosecutor waited nearly six months to seek a material-witness warrant for Nachica Wheeler even though Nachica was a reluctant witness at the preliminary examination, failed to keep an appointment with Detective DeVries, and informed defense counsel after the preliminary examination that she had testified falsely.   The Michigan Court of Appeals, however, determined that Petitioner waived his right to confront Nachica because his own wrongdoing was the cause of her unavailability.   This Court agrees.

Under the "forfeiture by wrongdoing" rule, "a defendant forfeits his Confrontation Clause rights when he is responsible for the out-of-court witness's unavailability." Doan v. Carter, 548 F.3d 449, 457 (6th Cir. 2008). The rule "extinguishes confrontation claims on essentially equitable grounds," Crawford, 541 U.S. at 62, and it applies when a defendant "engaged in conduct designed to prevent the witness from testifying. The rule require[s] the witness to have been 'kept back' or 'detained' by 'means or procurement' of the defendant." Giles, 554 U.S. at 359-60 (emphasis in original).

As noted above, Detective Timothy DeVries testified at trial that he reviewed Petitioner's telephone calls from jail:

> Defendant telephoned Nachica and informed her that he loved her and that the two would be married after he was released. Nachica agreed not to appear at court or cooperate with the detectives. Defendant telephoned another friend and stated [that] he planned on continuing a relationship with a woman named Brittany after his release, but, according to DeVries, defendant indicated that he "needed Nachica to cooperate, not come into court, so she was supposed to think that he was going to be coming back to her . . . ."

DeCosey, 2009 WL 1068878, at *3; see also Trial Tr. Vol. II, 146-150, Nov. 1, 2007.

The Michigan Court of Appeals concluded from this testimony that Petitioner "manipulated and influenced Nachica so that she refused to cooperate with police and failed to appear at court to testify." DeCosey, 2009 WL 1068878, at *3. This was a reasonable determination of the facts, and the state court's conclusion that Petitioner waived his right to confront Nachica by his own wrongdoing was a reasonable application of the Supreme Court's "forfeiture by wrongdoing" doctrine. Petitioner, therefore, has no right to habeas relief on the basis of his claim that the trial court violated his right of confrontation by admitting Nachica

16

Wheeler's prior-recorded testimony.          **b.    Rico  Wheeler  and  Taylor**

**Wheeler**

Petitioner claims that the police spent only an hour looking for Rico and Taylor Wheeler

when they failed to appear for trial.   The record, however, indicates that,

> with respect to Rico Wheeler, the police went to his residence, left messages at
> his residence, and sent officers to his residence on the morning of trial. . . .   With
> respect to Taylor Wheeler, the prosecutor did not have a reason to suspect that he
> would fail to appear on the day of trial. The prosecutor made contact with Taylor
> three days before trial, and Taylor indicated that he was aware of the trial and
> appeared  prepared  to  testify  at  that  time.   The  prosecutor  obtained  contact
> information from Taylor himself, and left messages for him; the police [also]
> were sent to his residence on the morning of the trial . . . .

DeCosey, 2009 WL 1068878, at *2; see also Trial Tr. Vol. II, 7-10, 141-46, Nov. 1, 2007.

The prosecution made a good faith effort to locate Rico and Taylor Wheeler and the trial

court reasonably concluded that the witnesses were unavailable.   Defense counsel, in fact,

agreed that there was nothing more the police could do to locate the missing witnesses, and he

declined the trial court's offer to hold a hearing to determine what efforts were made to locate the

witnesses.   While

> it is always possible to think of additional steps that the prosecution might have
> taken to secure the witness' presence, . . . the Sixth Amendment does not require
> the prosecution to exhaust every avenue of inquiry, no matter how unpromising.
> And, more to the point, the deferential standard of review set out in 28 U.S.C. §
> 2254(d) does not permit a federal court to overturn a state court's decision on the
> question of unavailability merely because the federal court identifies additional
> steps that might have been taken.   Under AEDPA, if the state-court decision was
> reasonable, it cannot be disturbed.

Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (internal citation omitted).

The state court reasonably determined that the Wheelers were unavailable.   Thus, their

decisions cannot be disturbed.

17

## 2.   Failure to Adjourn Trial

Petitioner maintains that it was error for the trial court not to adjourn his trial to preserve his constitutional rights when the Wheelers failed to appear in court. The Michigan Court of Appeals, however, determined that the trial court neither abused its discretion, nor violated Petitioner's constitutional rights, by denying Petitioner's request for an adjournment.

The Supreme Court held in <u>Morris v. Slappy</u>, 461 U.S. 1, 11 (1983), that "[t]rial judges necessarily require a great deal of latitude in scheduling trials" and that "broad discretion must be granted trial courts on matters of continuances . . . ."

> To demonstrate that the trial court's error amounts to an abuse of a trial court's discretion requiring reversal, the defendant must show that actual prejudice stemmed from the denial of the motion.   <u>United States v. King</u>, 127 F.3d 483, 487 (6th Cir. 1997).   The defendant demonstrates actual prejudice by showing that a continuance would have made relevant witnesses available or added something to the defense.   <u>Id</u>.

> Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case with the trial judge considering, among other things, the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice.   <u>See Wilson v. Mintzes</u>, 761 F.2d 275, 281 (6th Cir. 1985).

<u>United States v. McClendon</u>, 146 F. App'x 23, 26-27 (6th Cir. 2005).

The trial court properly declared the Wheelers unavailable.   Therefore, the trial court did not err by refusing a continuance on the second day of trial.   <u>United States v. Bollin</u>, 729 F.2d 1083, 1083 (6th Cir. 1984) (<u>per curiam</u>).   Furthermore, Petitioner has failed to demonstrate that a continuance would have made the Wheelers available, or that they would have added something to the defense.   In the words of the Michigan Court of Appeals, "further efforts to locate the witnesses would have been futile even with additional time," and "[t]here was no good

18

reason to adjourn the trial where extensive efforts had already failed to procure the witnesses."
DeCosey, 2009 WL 1068878, at *3.   Petitioner, therefore, has no right to habeas relief on the
basis of the trial court's failure to grant a continuance.

### 3.  Nachica Wheeler's Statement to the Police

Petitioner's final claim under the Confrontation Clause alleges that the trial court erred by
admitting in evidence Nachica Wheeler's comments to Officer Baker at the crime scene.[4]
Although Nachica did not testify at trial and could not be cross-examined about her statement to
Officer Baker,  the Michigan Court of Appeals determined that Petitioner waived his right to
confront Nachica by his own wrongdoing, including his manipulation of Nachica.

Petitioner denies encouraging Nachica to absent herself.  He claims that Nachica made
her own decision not to testify.  The record, however, belies Petitioner's assertion.  At trial,
Detective Timothy DeVries recounted Petitioner's telephone calls while he was confined in jail.
According to Detective DeVries, Petitioner said in one conversation with Nachica that he loved
Nachica and that they were going to get married.  Nachica then promised not go to court or to
speak with detectives.  In a telephone conversation with someone else, Petitioner stated that he
intended to continue a relationship with a woman named Brittany, but because he needed
Nachica's cooperation, he was leading Nachica to believe that he was planning to return to her.

Detective DeVries' testimony was evidence that Petitioner engaged in conduct designed
to prevent Nachica from testifying, and the state appellate court's conclusion – that Petitioner
waived his right to confront Nachica by his own wrongdoing – was a reasonable application of

---

[4]   Nachica's comments to Officer Baker were admitted in evidence through Officer
Baker's testimony.   See supra p. 4.

<u>Crawford</u> and <u>Giles</u>.  Petitioner, therefore, has no right to habeas relief on the ground that he was denied his right to confront Nachica about her statement to Officer Baker.

## C.   The Sentencing Guidelines

The third habeas claim alleges that offense variables four, seven, eight, and nine of the Michigan sentencing guidelines were incorrectly scored.  Petitioner  contends that the four scoring errors inflated his total offense variable score from 65 points to 150 points and resulted in a guideline range of 117-240 months, rather than a correct guideline range of 99 to 240 months.

The state court's interpretation and application of its own sentencing laws and guidelines is a matter of state concern only,  <u>Howard v. White</u>, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law."  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).  Petitioner, however, also claims that the trial court relied on inaccurate information, and the Supreme Court has stated that a sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, violates due process.  <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948).  For the following reasons, the Court finds that Petitioner was not sentenced on the basis of extensively and materially false information and, therefore, his right to due process of law was not violated.

### 1.   Offense Variable Four (psychological injury to a victim)

Petitioner received ten points for offense variable four because the trial court determined that "serious psychological injury requiring professional treatment occurred to a victim."  Mich. Comp. Laws § 777.34(1)(a).   Petitioner asserts Nachica Wheeler never expressed any psychological trauma or need for counseling and, therefore, he should not have been assessed ten points for offense variable four.   The record, however, indicates that Petitioner

> choked the victim, slammed her head against a door, threw her to the ground, pointed a gun at her head, and repeatedly threatened to kill her.  In addition, the

victim told Officer Baker that she believed she was going to be shot on several different occasions.   Moreover, Officer Baker testified that the victim was crying hysterically and hyperventilating, and on that basis, he sought medical attention for her.

DeCosey, 2009 WL 1068878, at *4; see also Trial Tr. Vol. II, 134-36, 139, Nov. 1, 2007.

The fact that Nachica may not have sought psychological treatment is not conclusive on the issue of whether serious psychological injury requiring professional treatment occurred. Mich. Comp. Laws § 777.34(2).   This Court,  therefore, agrees with the Court of Appeals that the evidence supported a score of ten points for offense variable four.

### 2.   Offense Variable Seven (aggravated physical abuse)

Petitioner received fifty points for offense variable seven because the trial court determined that he treated a victim "with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Mich. Comp. Laws § 777.37(1)(a).   Petitioner claims that none of these factors were present in his case and that he did not intend to increase Nachica's fear and anxiety.

The Michigan Court of Appeals determined that the trial court properly scored offense variable seven at fifty points because the evidence established that Petitioner choked the victim, slammed her head against a door, threw her to the ground, pointed a gun at her head, and repeatedly threatened to kill her.   This evidence supported a finding that Petitioner engaged in conduct designed to substantially increase Nachica's fear and anxiety.   Therefore, the trial court did not rely on materially false information when it scored offense variable seven at fifty points.

### 3.   Offense Variable Eight (victim asportation or captivity)

Petitioner received fifteen points for offense variable eight on the basis that a "victim was asported to another place of greater danger or to a situation of greater danger or was held captive

21

beyond the time necessary to commit the offense."   Mich. Comp. Laws § 777.38(1)(a). Petitioner initially was charged with kidnapping and unlawful imprisonment, but Nachica Wheeler testified at the preliminary examination that she felt free to leave at any time during the offense.   Consequently, the state district court judge determined that there was insufficient evidence to bind Petitioner over on charges of kidnapping and unlawful imprisonment.

Petitioner argues that, if Nachica's testimony was insufficient to establish probable cause of asportation or captivity at the preliminary examination, the same testimony, which was read into evidence at trial, failed to support a score of fifteen points for offense variable eight. Petitioner further alleges that there was no evidence he transported Ms. Wheeler to a place of greater danger or that he prolonged her captivity.

The Michigan Court of Appeals agreed with Petitioner that the evidence did not support the score of fifteen points for offense variable eight.   The Court of Appeals, however, stated that Petitioner was not entitled to re-sentencing because scoring offense variable eight at zero points would not change the recommended sentencing guidelines range.[5]

"Habeas relief is only appropriate if the constitutional error harmed the petitioner," Villagarcia v. Warden, Noble Corr. Inst., 599 F.3d 529, 536 (6th Cir. 2010), and, in order for the Court to grant the writ of habeas corpus, it "would have to conclude that the alleged error had a 'substantial and injurious effect or influence in determining' the outcome of [Petitioner's] sentencing proceeding."   Stumpf v. Robinson, __ F.3d __, __, No. 01-3613, 2013 WL 3336739, at *10   (6th Cir. July 3, 2013) (quoting Brecht v. Abrahamson, 507 U.S. 619,  637 (1993)).

---

[5] The Court of Appeals nevertheless remanded the case to the trial court with instructions to correct the scoring of offense variable eight on the sentencing information report.

Here, the error in scoring offense variable eight did not have a substantial and injurious effect or influence on Petitioner's sentencing proceeding because it did not affect the recommended sentencing guidelines range.   Thus, the error was harmless and Petitioner has no right to relief on the basis of his claim about offense variable eight.

### 4.   Offense Variable Nine (number of victims)

Petitioner received ten points for offense variable nine on the basis that there were two to nine victims "who were placed in danger of physical injury or death."  Mich. Comp. Laws § 777.39(1)(c).   The sentencing guidelines were based on Petitioner's conviction for extortion and, under state law, only the persons endangered during the offense being scored may be counted as "victims" for purposes of calculating the offense variable.  People v. Gullett, 744 N.W.2d 200, 202  (Mich. Ct. App. 2007).   Petitioner claims that he should not have received ten points for offense variable nine because Nachica Wheeler was the only victim of the extortion.

The Michigan Court of Appeals disagreed, pointing out that "Nachica informed Officer Baker that both Taylor [Wheeler] and a friend were present when [Petitioner] was choking her, when he threw her to the ground, and when he forced her to telephone her brother" while waving a gun. The Court of Appeals concluded that "[t]his evidence support[ed] the trial court's finding that two people were placed in danger of physical injury or loss of life when [Petitioner] committed the act of extortion" and that the trial court properly assessed fifty points for offense variable nine.  DeCosey, 2009 WL 1068878, at *5; see also Trial Tr. Vol. II,  136, Nov. 1, 2007.   This was a reasonable conclusion based on the evidence.

### 5.   Summary

23

Petitioner has not demonstrated that the trial court relied on materially untrue assumptions or on extensively and materially false information, which he had no opportunity to correct through counsel.  Therefore, his right to due process was not violated, and he is not entitled to habeas relief on the basis of the scoring of the sentencing guidelines.

### D.   Jail Credit

The fourth and final claim alleges that Petitioner should have been given 232 days of credit against his minimum sentence for the time that he spent in jail before sentencing.  The Michigan Court of Appeals determined that Petitioner was not entitled to sentencing credit on his new sentence because he was on parole when he committed the crimes.   As explained in People v. Seiders, 686 N.W.2d 821, 824 (Mich. Ct. App. 2004), "[a] parolee who is arrested for a new offense and is incarcerated on a parole detainer serves jail time on the paroled offense."

Petitioner alleges that he did not receive credit for either the parole offense or the new offense, but even if he is correct, the computation of a prison term "involves a matter of state law that is not cognizable under 28 U.S.C. § 2254."   Kipen v. Renico, 65 F. App'x 958, 959 (6th Cir. 2003).   The Court, therefore, declines to grant habeas relief on Petitioner's fourth and final claim.

### V.   CONCLUSION

The state appellate court's opinion on Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.   Petitioner's claims under the Confrontation Clause are procedurally defaulted, forfeited, or without merit, and his sentencing claims lack merit or are not cognizable on habeas review.   Accordingly, the petition for a writ of

habeas corpus (Dkt. 1) is denied.

## VI.   CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.   Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"   Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).   A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   Miller-El,  537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).   Reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or deserve encouragement to proceed further.   Accordingly, a certificate of appealability is denied.   However, because an appeal could be taken in good faith, Petitioner may proceed in forma pauperis on appeal if he elects to appeal this Court's decision.   28 U.S.C. § 1915(a)(3).


        SO ORDERED.

Dated:   August 19, 2013                                    s/Mark A. Goldsmith_____
        Flint, Michigan                                    MARK A. GOLDSMITH
                                                           United States District Judge

25

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 19, 2013.

                             s/Deborah J. Goltz
                             DEBORAH J. GOLTZ
                             Case Manager

26